IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **Courtney Elizabeth Brown-Hudgins**, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 3:13-cv-0874 |
| | ) | SENIOR JUDGE NIXON |
| vs. | ) | MAGISTRATE JUDGE BROWN |
| | ) | |
| **Carolyn Colvin,** | ) | |
| **Comm'r of Soc. Sec.** | ) | |
| | ) | |
| Defendant. | | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

## REPORT & RECOMMENDATION

This action was brought pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of the unfavorable decision of the Social Security Administration ("SSA") by the SSA Commissioner ("the Commissioner") regarding plaintiff's application for supplement disability benefits ("DIB") under Title II of the Social Security Act ("SSI") 42 U.S.C. §§ 42 U.S.C. §§ 416(i), 423(d). For the reasons explained below, the undersigned **RECOMMENDS** that the plaintiff's motion for judgment on the record be **GRANTED** and the ruling of the Administrative Law Judge ("ALJ") be **REMANDED** for reconsideration.

### I. PROCEDURAL HISTORY

Courtney Elizabeth Brown-Hudgins ("Plaintiff") initially filed for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), on July 16, 2009 alleging December 31, 2008 as the onset date. (Administrative Record ("AR"), Docket Entry 13 ("Doc."), pp. 103, 122) Plaintiff's claim is based upon diagnoses of knee malformation, arthritis, instability. (AR., Doc. 13, p. 122) Plaintiff's application was denied on December 7, 2009 and again upon reconsideration on April 15, 2010. (AR., Doc. 13, pp. 54-56, 60-61) On May 28, 2010, Plaintiff

requested a hearing before an ALJ, Shannon H. Smith. (AR., Doc. 13, p. 63) The hearing was conducted on January 10, 2012. (AR., Doc. 13, p. 13)

The ALJ denied Plaintiff's application on February 8, 2012 and Plaintiff requested review of the ALJ's determination on April 2, 2012. (AR., Doc. 13, pp. 7, 10) The SSA Appeals Council denied review of the ALJ's determination on June 27, 2013, rendering the ALJ's decision the Commissioner's final determination at that time. (AR., Doc. 13, p. 1)

Plaintiff brought this action in federal district court on August 29, 2013 seeking judicial review of the Commissioner's decision.[1] (Doc. 1) The Commissioner filed answer and a copy of the administrative record on November 21, 2013. (Doc. 12, 13) On December 20, 2013, Plaintiff moved for judgment on the administrative record (Doc. 15), and the Commissioner responded on January 10, 2014. (Doc. 17) Plaintiff filed reply to the Commissioner's response on January 30, 2014. (Doc. 19)

This matter is properly before the court.

## II. THE RECORD BELOW

### A. Medical Evidence

Plaintiff was examined by Dr. Craig Goodhart on October 2, 2007 due to pain in her right knee. (AR., Doc. 13, p. 205) Dr. Goodhart's notes indicate that Plaintiff had one prior patellar debridement[2] and lateral retinacular release,[3] but reported pain in her knee as well as sensations of the knee locking or giving way. (AR., Doc. 13, p. 205) Dr. Goodhart noted that Plaintiff

---

[1] By Order dated September 6, 2013, Plaintiff was granted permission to proceed *in forma pauperis*. (Doc. 3)

[2] Defined as "the removal of foreign material and devitalized or contaminated tissue from" the patella. Dorland's Illustrated Medical Dictionary 473 (32d Ed. 2012).

[3] Lateral retinaculum, as opposed to the medial retinaculum, is the tissue attached to the outside portion (distal as opposed to the medial) of the knee cap that maintains the patella centered over the knee joint. *See* http://www.ortho.wustl.edu/content/Patient-Care/3184/SERVICES/Pediatric-Orthopedics/Overview/Knee-Education-Overview/Lateral-Retinacular-Release.aspx. A lateral retinacular release is an arthroscopic process where the lateral retinaculum is severed from the knee cap to relieve pressure/tension and pain in the medial retinaculum. *Id.*

ambulated with a mildly amalgic gait,[4] had no difficulty squatting and standing but experienced some pain upon doing so. (AR., Doc. 13, p. 205) On October 17, 2007, Plaintiff underwent a second patellar debridement and lateral retinacular release in her right knee based upon Dr. Goodhart's recommendation. (AR., Doc. 13, p. 204) On October 23, Valerie Beard, a physician assistant, noted that Plaintiff was doing well after the surgery, experienced some tenderness as expected, and required a cane for stability. (AR., Doc. 13, p. 204) On November 8, 2007, Dr. Goodhart noted that Plaintiff was "doing very well [with] good range of motion, minimal swelling, and minimal pain." (AR., Doc. 13, p. 203) Dr. Goodhart prescribed physical therapy and emphasized stretching and strengthening exercises as well as weight control. (AR., Doc. 13, p. 203)

At Plaintiff's intake screening for physical therapy on October 30, 2007, she was noted as being unstable, needing a cane for ambulation, and her gait evidenced a "severe and constant" limp. (AR., Doc. 13, p. 218) It was impossible for Plaintiff to climb stairs or squat, her right knee locked up frequently and was constantly swollen, and she experienced marked pain after walking 2 kilometers. (AR., Doc. 13, p. 218) On November 2, 2007, Plaintiff was able to bear her full weight on her right leg. (AR., Doc. 13, p. 217) Although Plaintiff's knee remained stiff and "popped" frequently, she was "progressing well in terms of range of motion" and was able to perform squatting exercises. (AR., Doc. 13, p. 213) Plaintiff was discharged from physical therapy on December 12, 2007 because she did not complete the prescribed physical therapy. (AR., Doc. 13, p. 211) According to her progress notes, Plaintiff "made advancements in terms of range of motion and strength as well as functional mobility, then stopped coming to physical therapy." (AR., Doc. 13, p. 211)

---

4     Defined as "a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side." *See* http://www.medilexicon.com/medicaldictionary.php?t=35907.

On August 11, 2009, Dr. Thomas Limbird noted that Plaintiff was "doing quite nicely" from her most recent Goldthwait procedure.[5] (AR., Doc. 13, p. 228) According to Dr. Limbird, Plaintiff experienced "a little instability of the patella when she pedals a bicycle fast, but if she starts a little slower and works up to it, she does not notice any." (AR., Doc. 13, p. 228) Dr. Limbird also noted that Plaintiff's patella "tracks quite nicely." (AR., Doc. 13, p. 228) On August 28, 2009, Dr. Marc Bennett, a DDS examining physician, performed an all systems examination of Plaintiff as part of her claims to DIB. (AR., Doc. 13, pp. 229-37) Dr. Bennett noted that Plaintiff exhibited numbness and tingling over her right knee, that she was obese, and suffered from arthritis in both knees. (AR., Doc. 13, p. 231) According to Dr. Bennett's notes, Plaintiff claimed that she was beginning to experience stability issues with her left knee, but "her physician want[ed] her to be able to put all of her weight on her right knee before he addresse[d] the left knee." (AR., Doc. 13, p. 230)

Despite swelling over her right knee, Plaintiff's strength was recorded as 5/5 in all muscle groups. (AR., Doc. 13, p. 233) The range of motion in Plaintiff's left knee was recorded as normal, but she "refused [for her right knee] to be evaluated due to pain." (AR., Doc. 13, p. 235) Dr. Bennett noted that a knee brace and a cane were medically necessary for ambulation, and that Plaintiff exhibited obvious difficulty standing from a seated position or climbing onto an examining table. According to Dr. Bennett, Plaintiff can occasionally lift up to ten pounds and she can frequently lift and carry ten pounds.[6] She is capable of standing or walking less than two

---

[5] Roux-Goldthwait Procedure – "a distal realignment procedure where the patellar tendon is split vertically [and t]he lateral half is pulled under the medial half and attached to the tibia." McNicholas Knee Clinic, Patient Information on Roux-Goldthwait Procedure (2006) *available at* http://www.mcnicholaskneeclinic.co.uk/pdfs/childdislocationroux.pdf (last reviewed April 2006). Expected recovery times for this procedure are 4 to 6 months. *Id.*

[6] Dr. Bennett's conclusion that Plaintiff can carry 10 pounds frequently as well as only occasionally is highly inconsistent and implausible. However, the Magistrate Judge notes that, even with the apparent inconsistency, Dr. Bennett's capacity assessment is substantially lower than that of either DDS expert.

hours in an eight hour work day, and is able sit for less than six hours in an eight hour work day. (AR., Doc. 13, p. 237) Ultimately, Dr. Bennett found that Plaintiff was "getting physically unable to ambulate" and experienced a "decreased range of motion" due to "bilateral knee disease." (AR., Doc. 13, p. 236)

On October 26, 2009, Dr. Christian W. Fletcher, M.D., a DDS internal medicine reviewing physician,[7] reviewed Plaintiff's medical file. Dr. Fletcher noted Plaintiff's knee surgery from 2007 and her current complaints, but concluded that x-rays were needed before he could form an opinion. (AR., Doc. 13, p. 241) After receiving x-rays of Plaintiff's right knee taken on November 10, 2009 showing "no significant degenerative changes" (AR., Doc. 13, p. 242), Dr. Fletcher concluded that Plaintiff's complaints were not credible. (AR., Doc. 13, p. 250) Based upon his review of the medical record, Dr. Fletcher concluded that Plaintiff is capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, able to sit/stand/walk for six hours out of an eight hour day, but is limited in her lower extremities. (AR., Doc. 13, p. 254) Further, Dr. Fletcher concluded that Plaintiff can climb, balance, or stoop frequently; and kneel, crouch, or crawl occasionally. (AR., Doc. 13, p. 245) Dr. Fletcher's assessment does not reflect the Goldthwait procedure performed in August of 2009, however.

Dr. Kanika Chaudhuri, M.D., a DDS reviewing physician,[8] reviewed Plaintiff's medical records on April 3, 2010 and, like Dr. Fletcher, concluded that Plaintiff is capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, able to sit/stand/walk for six hours out of an eight hour day, but is limited in her lower extremities. (AR., Doc. 13, p. 253) Unlike Dr. Fletcher, however, Dr. Chaudhuri concluded that Plaintiff's medical conditions place no

---

[7] The MSS completed by Dr. Fletcher indicates that he practices internal medicine. SSA Programs Operations Manual Systems ("POMS") 26510.090D.

[8] Dr. Chaudhuri's specialty code is listed as 32—a pediatrician. POMS 26510.090D.

restrictions on her ability to climb, balance, stoop, kneel, crouch, or crawl. (AR., Doc. 13, p. 254) According to Dr. Chaudhuri, Plaintiff is capable of assuming any of these postures frequently, even while lifting or carrying up to 25 pounds. (AR., Doc. 13, p. 254) Also like Dr. Fletcher, Dr. Chaudhuri's assessment does not include mention of the Goldthwait procedure performed in August of 2009.

X-rays performed by Dr. Stacey Dinkins on August 25, 2011 revealed "degenerative joint disease [in Plaintiff's right knee] that was more pronounced in the medial compartment," and "mild degenerative joint disease [in Plaintiff's left knee] that was [also] more pronounced in the medial compartment." (AR., Doc. 13, p. 291) Dr. Dinkins' examination of Plaintiff's knees revealed that her range of motion was "equal and symmetric." (AR., Doc. 13, p. 292) Dr. Dinkins noted that Plaintiff exhibited "[d]ifficulty with heel to toe walking," and recommended that she "be mindful of the over the head activities, heavy lifting, sudden twisting motion, and prolonged sitting." (AR., Doc. 13, p. 293) In November of 2011, Dr. Dinkins ordered magnetic resonance images of Plaintiff's knees. However, her review of those images did not alter her original opinion. (AR., Doc. 13, pp. 299-300)

Plaintiff was admitted to the emergency room on September 25, 2011 after falling while attempting to climb up stairs. (AR., Doc. 13, p. 262) X-rays on Plaintiff's left knee "reveal[ed] no evidence of fracture, bony abnormality, dislocation or joint effusion [and that] the joint spaces appear[ed] normally preserved." (AR., Doc. 13, p. 274) Plaintiff was again admitted to the emergency room on October 20, 2011 after her left knee "gave out" causing her to fall in her backyard due to the steep incline. (AR., Doc. 13, pp. 278, 282) X-rays revealed "no acute change" but did reveal "[a] small area of sclerosis [] in the lateral posterior proximal tibia." (AR., Doc. 13, p. 290) No x-rays were taken of Plaintiff's right knee on either date.

## B. Testimonial Evidence

The ALJ posed three hypotheticals to the vocational expert ("VE") for. First, the ALJ

> [a]ssume[d] an individual with the same age, education, and past work experience as described for the claimant. This individual could lift and carry 50 pounds occasionally and 25 pounds frequently; pushing and pulling would be limited to frequently with the lower extremity, either lower extremity. She can sit, stand, or walk for six to eight hours each with normal breaks; can frequently climb ramps or stairs; only occasionally climb ladders, ropes, or scaffolds; frequently balance and stoop; and occasionally kneel, crouch, and crawl.

(AR., Doc. 13, p. 47) In response, the VE testified that three of Plaintiff's past clerical jobs would be available to her. (AR., Doc. 13, p. 48) In the second hypothetical, the ALJ

> Assume[d] an individual with the same age, education, and past work experience as the claimant and the ability to lift and carry 50 pounds occasionally and 25 pounds frequently; could sit for six to eight hours and stand and walk for six to eight hours but would need to be able to alternate sitting and standing as necessary for pain considerations, but could remain on task at the workplace while doing that; could frequently climb, kneel, crouch, crawl, balance, and stoop.

(AR., Doc. 13, p. 48) Again, the VE reported that the same three clerical jobs would be available to Plaintiff. (AR., Doc. 13, p. 48) In her third hypothetical, the ALJ asked the VE to

> [a]ssume an individual again same age, education, and past work experience but this time limited to lifting and carrying 10 pounds occasionally and frequently; can sit for six to eight hours; can stand or walk for two out of eight hours in a normal workday, all with normal breaks; can frequently climb, kneel, crouch, crawl, balance, and stoop.

(AR., Doc. 13, p. 48) In response, the VE testified that only two of Plaintiff's past sedentary jobs would be available to her. (AR., Doc. 13, p. 48)

## C. Ruling of the ALJ

On February 8, 2012, the ALJ released her unfavorable decision in regard to Plaintiff's DIB claim. (AR., Doc. 13, pp. 8-24) After consideration of Plaintiff's medical record, Plaintiff's testimony, and the opinion evidence available in the file, the ALJ assessed Plaintiff's RFC on her DLI as the

functional capacity to perform medium exertional work with lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking six hours out of an eight hour day with normal breaks; sitting for six hours out of eight hour workday with normal breaks; alternating sitting and standing as necessary for pain; and frequently climbing, kneeling, crouching, crawling, balancing and stooping.

(AR., Doc. 13, pp. 15-6)

In regard to obesity, found to be a severe impairment, the ALJ reasoned that

[t]he records show a long history of obesity. The claimant is 5 '6" tall and has weighed in excess of 260 pounds in all of the medical evidence of record, which translates to a BMI in the 42-43 range. It has been noted that the claimant's obesity contributes to her knee pain, which is understandable. The undersigned evaluated the claimant's obesity and accompanying impairments in accordance with Social Security Ruling 02-lp, which provides that the Administrative Law Judge must assess the effect that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment. The limitations arising from the claimant's obesity and its effects on the claimant knee impairments is reflected in the residual functional capacity assessment above.

(AR., Doc. 13, p. 17)

### III. ANALYSIS

**A. Standard of Review**

The District Court's review of the Commissioner's denial of DIB is limited to a determination of whether those findings are supported by substantial evidence and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A finding of substantial evidence does not require all the evidence in the record to preponderate in favor of the ALJ's determination, but does require more than a mere scintilla of support for a denial of DIB. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ's determination is entitled to deference where "a reasonable mind might accept [evidence in the record] as adequate to support" the ALJ's determination even though it could also support a different conclusion. *Rogers*, 486 F.3d at 241; *Her v. Comm'r of Soc. Sec.*, 203

F.3d 388, 389-90 (6th Cir. 1999). "[F]ailure to follow the rules" promulgated to control the process of benefit determination "denotes a lack of substantial evidence, even where the ALJ's" determination is otherwise supportable. *Cole*, 661 F.3d at 937 (*quoting Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

**B. Assignments of Error**

Plaintiff asserts that the ALJ failed to consider all of her impairments through a function by function assessment of her RFC, that the ALJ failed to properly consider her obesity in the RFC, that the ALJ failed to properly consider and weigh the medical opinions in the file, and that the ALJ failed to properly evaluate her credibility. As an initial matter, the Magistrate Judge notes the Commissioner's argument that Plaintiff is clearly capable of performing her prior sedentary level work, and, thus, she is not disabled under the regulations. (D. Response, Doc. 17, p. 6) Such argument here, however, constitutes an impermissible "post hoc rationalization" no matter how well supported from the record. *North Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 691 F.3d 735, 742 (6 th Cir. 2012) (quoting *Martin v. Occupational Safety & Health Review Commission*, 499 U.S. 144, 156 (1990))

According to her own expert, Dr. Bennett, Plaintiff is capable of sedentary work which the VE testified permitted her to return to at least two of her past relevant occupations. *See* 20 C.F.R. § 404.1520(a)(4)(iv) (providing that a claimant whose RFC permits return to "past relevant work . . is not disabled." Rather than to opt for the more conservative sedentary RFC assessment, the ALJ below found Plaintiff capable of "medium exertional work." (AR., Doc. 13, p. 15) Had the ALJ given significant weight to the opinion of Dr. Bennett and assessed Plaintiff's RFC at a sedentary level, Plaintiff's lifting and postural limitations would not be pertinent under SSR 96-8p, consideration of the weight given to the opinions of the relevant

9

medical experts would be moot, as would Plaintiff's credibility claims. The ALJ's decision to assess the *least* restrictive RFC proposed by the medical experts was clearly erroneous according to SSR 02-1p. Thus, because "[a] procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway," the Magistrate Judge finds Plaintiff's second claim of error to be well taken. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977) (alterations from the original) (internal quotations omitted)).

(1) ***The ALJ Did Not Properly Consider Plaintiff's Obesity in Conjunction with Her Other Impairments***

Plaintiff argues that, despite finding her obesity a severe impairment, the ALJ "did not properly consider [Plaintiff's] obesity and did not adequately evaluate the exacerbating effects" on Plaintiff's other impairments. (Plaintiff's Motion for Judgment on the Administrative Record ("P. Motion"), Doc. 16, p. 7) According to Plaintiff, the ALJ glossed over the impact of obesity on Plaintiff's congenital knee malady and instability. (P. Motion, Doc. 16, p. 8) Further, Plaintiff asserts that the ALJ's statement regarding the interplay of obesity and her knee problems is essentially boilerplate. (P. Motion, Doc. 16, p. 8) The Commissioner responds that the overall RFC assessment reflects the exacerbating effects of obesity upon Plaintiff's chronic knee problems. (D. Response, Doc. 17, p. 5)

Although obesity is no longer a listed impairment as Plaintiff claims (P. Motion, Doc. 16, p. 8), SSR 02-1p provides that

> [a]n assessment should also be made of the effect obesity has upon the individual's ability to perform *routine movement and necessary physical activity* within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time . . . [O]ur RFC assessments must consider an individuals' maximum remaining ability to do sustained work activities in an ordinary work setting ona [sic] regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 442-43 (6th Cir. 2010) (quoting SSR 02-1p, 2002 SSR LEXIS 1 at * 16-17) (emphasis added).

Despite the ALJ's statement that she considered the impact "that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment," the record reflects that the overall RFC assessed by the ALJ considers only how "obesity contributes to [Plaintiff's] pain" rather than how her obesity impairs Plaintiff's mobility and exertional ability as is contemplated by SSR 02-1p. As noted *supra* at p. 7, the ALJ made only a slight modification to the standard medium exertional classification—a sit/stand option "as necessary for pain."[9]  (AR., Doc. 13, pp. 15-16)  The ALJ found that Plaintiff's movement/mobility was not impaired and was capable of "frequently climbing, kneeling, crouching, crawling, balancing, and stooping."  (AR., Doc. 13, p. 16)

Moreover, the ALJ's ultimate RFC corresponded to the least restrictive of the hypotheticals posed to the ALJ as demonstrated *supra* at p. 7, and the least restrictive RFC assessed by any of the SSA experts.  Unlike Dr. Fletcher who opined that Plaintiff could only occasionally kneel, crouch, or crawl; Dr. Chauduri opined that Plaintiff could do so frequently. (AR., Doc. 13, pp. 245, 254)  As Plaintiff claims, it seems "overly optimistic . . . that an obese claimant who has undergone knee surgeries can" stoop or crouch frequently.  (P. Motion, Doc. 16, p. 9)  This is particularly so given that a medium exertion classification requires Plaintiff to frequently crouch and kneel while lifting up to 25 pounds. According to SSR 80-10, "[f]lexibility of the knees as well as the torso is important for this" classification.  SSR 83-10, 1983 SSR LEXIS 30 at *15.

---

[9]  SSR 83-10, 1983 SSR LEXIS 30, provides that work at the medium exertional level requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time."  1983 SSR LEXIS 30 at * 15.

Although Dr. Limbard noted in August of 2011 that Plaintiff feels "a little instability" in her right knee and that her patella "tracked nicely," this instability occurred while Plaintiff was riding a bicycle and her knees were not required to carry her own weight much less an additional 25 pounds as the ALJ's RFC assessment requires. Further, despite the fact that x-rays taken in November showed "the osseous structures are otherwise aligned and intact" in Plaintiff's knees, it is clear that Plaintiff experienced some instability when ambulating normally. (AR., Doc. 13, pp. 228, 242) Plaintiff was seen at the emergency room after her right knee gave way while negotiating stairs in September of 2011 and negotiating an incline in her back yard in October of 2011. (AR., Doc. 13, pp. 261-88) Plaintiff was not carrying 25 pounds of additional weight on either occasions as she would be during medium level work, and she was utilizing a cane for stability at the time. In addition, Dr. Dinkins' warning to be mindful of "overhead activities, heavy lifting, sudden twisting motion[s] and prolonged sitting" is clearly indicative of some limitations on Plaintiff's postural abilities and mobility. (AR., Doc. 13, p. 297)

The Magistrate Judge finds that the ALJ failed to properly assess the exacerbating effects of Plaintiff's obesity upon her mobility as SSR 02-1p requires. Thus, the ALJ's failure to follow the rules here "denotes a lack of substantial evidence." *Cole*, 661 F.3d at 937

### IV. <u>CONCLUSION</u>

For the above stated reason, the Magistrate Judge finds that the ALJ failed to properly assess the exacerbating effect of Plaintiff's obesity upon her physical impairments and mobility as required by SSR 02-1p. This failure deprives the ALJ's ultimate conclusion of substantial evidence.

## V. RECOMMENDATION

The undersigned recommends that the plaintiff's motion for judgment on the record (Doc 16) be **GRANTED** and her claim be **REMANDED** to the Commissioner for reconsideration.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 24th day of June, 2014.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge