# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| COURTNEY ELIZABETH BROWN-HUDGINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 3:13-cv-00874 <br><br> Judge Nixon <br> Magistrate Judge Brown |

## ORDER

Pending before the Court is Plaintiff Courtney Elizabeth Brown-Hudgins' Motion for Judgment on the Administrative Record ("Motion"). (Doc. No. 15.) On June 24, 2014, Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Brown-Hudgins' Motion be granted and the matter be remanded to the Commissioner for further proceedings. (Doc. No. 20 at 13.) On July 7, 2014, the Commissioner filed Objections to the Report (Doc. No. 21), to which Brown-Hudgins filed a Response (Doc. No. 22). For the reasons stated below, the Report (Doc. No. 20) is **ADOPTED** as modified below, Brown-Hudgins' Motion (Doc. No. 15) is **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings. The Clerk of the Court is **DIRECTED** to close the case.

I. BACKGROUND

The Court adopts the statement of facts and the procedural posture of this case as set forth by the Magistrate Judge (Doc. No. 20 at 1–8) with the following elaborations and exception. Brown-Hudgins has obesity, degenerative joint disease in both knees, and has undergone three

1

surgeries on her right knee to correct a congenital malformation. (*Id.* at 2–4; Tr. 229–30.)[1] The last surgery took place sometime before August 11, 2009, and the average recovery time is four to six months. (Doc. No. 20 at 4.)

As described by the Magistrate Judge, the record contains three medical source statements about Brown-Hudgins' ability to perform work-related activities. The first, issued by Dr. Marc Bennett after examining Brown-Hudgins on August 28, 2009, found Brown-Hudgins' ability to "walk, twist, turn, bend and lift *was adversely affected*" by her obesity, and that she could frequently and occasionally lift a maximum of ten pounds, walk for less than two hours a day, and sit for less than six hours a day. (Tr. 235–37 (emphasis original).) The second, issued after a review of Brown-Hudgins' medical records by non-examining physician Dr. Christopher Fletcher on December 4, 2009, found Brown-Hudgins could lift fifty pounds occasionally; twenty-five pounds frequently; stand or walk about six hours in a workday; sit for about six hours in a workday; climb ramps and stairs, balance, and stoop frequently; and climb ladders, kneel, crouch, and crawl occasionally. (Tr. 244–45.) The third, issued after a review of the medical records by non-examining physician Dr. Kanika Chaudhuri on April 13, 2010, reached the same conclusions as Dr. Fletcher's evaluation, except Dr. Chaudhuri found Brown-Hudgins could frequently climb, kneel, crouch, and crawl. (Tr. 253–54.)

At the administrative hearing, Administrative Law Judge ("ALJ") Shannon H. Smith posed three hypotheticals to the Vocational Expert ("VE"). First, the ALJ asked the VE what jobs a person with the functional limitations described by Dr. Fletcher could perform, and the VE concluded the person could perform three of Brown-Hudgins' past clerical jobs. (Tr. 46–47; *see* Tr. 244–45.) Second, the ALJ asked the VE what jobs a person with the functional limitations

---

[1] The administrative record is available electronically at Docket Number 13.

described by Dr. Chaudhuri could perform, and the VE concluded the person could perform three of Brown-Hudgins' past clerical jobs. (Tr. 47; *see* Tr. 253–54.) Third, the ALJ said "I'm looking at [Dr. Bennett's opinion] on this one" and asked the VE what jobs a person with the following functional limitations could perform: "limited to lifting and carrying 10 pounds occasionally and frequently; can sit for six to eight hours; can stand or walk for two out of eight hours in a normal workday, all with normal breaks; can frequently climb, kneel, crouch, crawl, balance, and stoop." (Tr. 47; *see* Tr. 237.) The VE concluded this person would be capable of two of Brown-Hudgins' past jobs. However, contrary to the ALJ's statement at the hearing, these are not the functional limitations described by Dr. Bennett because he found Brown-Hudgins could sit for less than six hours and stand or walk for less than two hours. (Tr. 235–37.)

Following the ALJ's line of questioning, Brown-Hudgins' attorney asked the VE what jobs a person with the functional limitations imposed by Dr. Bennett could perform, and the VE concluded "that would render a person unemployable . . . since the totals for standing, sitting, and walking would equal less than eight hours." (Tr. 48; *see* Tr. 237.)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence

is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. THE COMMISSIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

The ALJ adopted Dr. Chaudhuri's residual functional capacity assessment ("RFC") and found Brown-Hudgins capable of "medium exertional work," except the ALJ found Brown-Hudgins must alternate "sitting and standing as necessary for pain." (Tr. 15–16.) Before the Magistrate Judge, Brown-Hudgins argued the ALJ's RFC assessment was erroneous because the ALJ did not properly consider the impact of Brown-Hudgins' obesity, weigh the medical opinions, perform a function-by-function assessment to determine her RFC, or assess her credibility. (Doc. No. 16 at 1.) Finding Brown-Hudgins was entitled to remand on the basis of

4

the erroneous obesity analysis alone, the Magistrate Judge did not address the other alleged errors. (Doc. No. 20 at 12.)

Upon review of the record, the Court agrees, for reasons other than those set forth by the Magistrate Judge, that the ALJ improperly evaluated the effects of obesity on Brown-Hudgins' RFC. Furthermore, the Court finds the RFC assessment is not supported by substantial evidence because the ALJ failed to explain her credibility findings and her RFC findings, contrary to SSA procedures.

A. *The ALJ's Analysis*

The SSA recognizes that "obesity may increase the severity of coexisting or related impairments," and that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Soc. Sec. Admin., Titles II & XVI: Evaluation of Obesity, Soc. Sec. Ruling 02-1P, 2002 WL 34686281, at *5–6 (Sept. 12, 2002) [hereinafter SSR 02-1P]. Accordingly, SSR 02-1P requires ALJs to consider the effects of obesity at all steps of the sequential disability evaluation process. *Id.* To trigger this requirement, the claimant must put forth evidence of "functional limitations resulting specifically from her obesity"—a doctor's recommendation that the claimant lose weight will not do. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004); *see Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857–58 (6th Cir. 2003). Even then, "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). However, if a claimant puts forth evidence of the impact of obesity and the expert reports relied on by the ALJ do not otherwise account for its effects, the ALJ "will explain how [she] reached [her]

5

conclusions on whether obesity caused any physical or mental limitations" in her Decision. *Norman v. Astrue*, 694 F. Supp. 2d 738, 749 (N.D. Ohio 2010) (quoting SSR 02-1P at *7).

Brown-Hudgins presented evidence that her obesity impacted her ability to perform work-related exertional activities. Dr. Bennett explicitly determined "[t]he ability of the patient to walk, twist, turn, bend and lift *was adversely affected*" by her obesity. (Tr. 235.) Furthermore, the ALJ did not credit Dr. Bennett's opinion. Instead, the ALJ appears to have based her RFC assessment on the opinions of the two non-examining physicians, Brown-Hudgins' x-rays, and two objective findings from Dr. Bennett's physical exam,[2] which together show "only mild degenerative joint disease in the claimant's left knee, and more pronounced degenerative disc disease in the right knee. The medical evidence establishes that the claimant's strength is maintained in her lower extremities, that her sensation is good and she is neurologically intact." (Tr. 18.) The non-examining physicians, Drs. Chaudhuri and Fletcher, also based their opinions primarily on these findings. Dr. Fletcher found Brown-Hudgins' allegations were "minimally credible" because "her surgery in 2007 was not major and not reconstructive, and the recent x-ray shows no chronic deg changes." (Tr. 250.) Although Dr. Chaudhuri stated "clt obesity considered w/alleged pain," Dr. Chaudhuri found Brown-Hudgins only "partially credible" because "[k]nee xr shows no degenerative changes," her 2007 knee surgery resulted in no complications, and "no neuro deficit at exam to support alleged dizziness." (Tr. 259.) The non-examining physician opinions and the ALJ's ultimate RFC assessment are all based on the same x-rays and normal strength and neurological test, and all three apparently relied on the objective

---

[2] Although the ALJ declined to give weight to examining physician Dr. Bennett's opinion because it was conducted shortly after Brown-Hudgins' last surgery and was "not consistent with the residual functional capacity and the medical evidence of record as a whole" (Tr. 18), the ALJ apparently credited certain of Dr. Bennett's findings because the only strength testing discussed in the ALJ's Decision was performed by Dr. Bennett (*see* Tr. 16).

medical evidence without considering how Brown-Hudgins' obesity compounded the functional limitations caused by her knee problems.[3]

Because Brown-Hudgins presented evidence that her obesity resulted in functional limitations and the ALJ did not credit an expert opinion that accounted for these limitations, the ALJ was required to explain how she considered the effects of Brown-Hudgins' obesity in making her RFC assessment. However, the ALJ did not. The ALJ did not address the specific functional limitations found by Dr. Bennett or explain why she credited certain findings in Dr. Bennett's opinion but not others. Instead, the ALJ wrote "[i]t has been noted that the claimant's obesity contributes to her knee pain, which is understandable," and modified the medium RFC to permit Brown-Hudgins to sit or stand as needed for pain. (Tr. 17.) This is an inadequate explanation because it does not account for any of the other alleged functional limitations or permit this Court to evaluate her reasoning. Accordingly, the Court concurs with the Magistrate Judge that the ALJ did not properly account for the effects of obesity in her RFC assessment.

In assessing a claimant's RFC, the ALJ must also address "the medical and other evidence on the disputed issues and explain[] the basis for his determination." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002). Although "[t]he ALJ need not

---

[3] The Court also notes that the most recent MRI, performed November 7, 2011 (Tr. 294), appears to show Brown-Hudgins' condition had deteriorated since the x-rays relied on by the ALJ were taken. However, the ALJ found records dating after Brown-Hudgins' date last insured, September 30, 2011, were "not relative [sic] to the establishment of disability prior to the date last insured" and did not consider them in the Decision. (Tr. 17.) This was error. Disability insurance benefits claimants must establish "the onset of disability prior to the expiration of []insured status." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) (quoting *Gibson v. Sec'y of Health, Educ., & Welfare*, 678 F.2d 653, 654 (6th Cir. 1982)). "Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time," *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976), provided the evidence relates back "to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). The ALJ excluded emergency room records from October 2011, as well as notes and MRIs from Dr. Stacy Dinkins dating from November 2011 through January 2012. However, Brown-Hudgins alleges a degenerative condition, the emergency room records document a fall allegedly resulting from that condition, and the treatment notes from Dr. Dinkins describe efforts to seek further care for the same condition. In light of Brown-Hudgins' degenerative condition, these records were created close enough to the insured period that the records are relevant to establish her condition and functional abilities during that period.

decide or discuss uncontested issues," she must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548 (citation omitted). Brown-Hudgins presented evidence that she had functional limitations beyond those incorporated into her RFC assessment, but the ALJ did not adequately address that evidence or explain the basis for her determination.

For instance, the ALJ determined Brown-Hudgins can "frequently" balance and climb. (Tr. 16.) The ALJ's Decision repeatedly cites evidence of Brown-Hudgins' balance problems, noting that "Dr. Goodhart gave the claimant a knee sleeve to help with her stability" (Tr. 16), and that Brown-Hudgins testified she "was still unable to use stairs because of the likelihood of falling and her knees giving out, causing balance and stability issues" (Tr. 17.), despite her surgeries. The ALJ also noted Brown-Hudgins "fell [in September 2011] and consequently reported experiencing knee pain" but the x-rays performed at that time "showed no evidence of fracture, bony abnormality, dislocation, or joint effusion." (*Id.*) However, the record shows Brown-Hudgins fell twice—in September 2011 and October 2011—when her knee "gave way" as she attempted to climb stairs (Tr. 262) and when she fell on an incline in her yard and was unable to lift herself off the ground (Tr. 282). The ALJ's assessment misrepresents the record because it does not recognize that Brown-Hudgins fell because her knee collapsed, or that the events took place while attempting to climb. Moreover, the ALJ did not explain why, despite the evidence to the contrary, she found Brown-Hudgins capable of frequently balancing and climbing.

Additionally, the ALJ apparently credited Brown-Hudgins' statement that she could perform certain household chores "but only when she could reach without bending down or

8

having to climb" (*see* Tr. 18), but the ALJ did not explain why she did not impose any resulting limitations on Brown-Hudgins' abilities to climb, stoop, kneel, crouch, or crawl. The ALJ also recognized that examining physician Dr. Bennett and the non-examining physicians, Drs. Chaudhuri and Fletcher, all reached different conclusions about Brown-Hudgins' abilities to climb, kneel, crouch, and crawl. Although the ALJ explained she did not credit Dr. Bennett's opinion because he examined Brown-Hudgins shortly after her last surgery (Tr. 16), the ALJ gave "significant weight" to both non-examining physician opinions without explaining how she reconciled the differences between them (Tr. 18).

Brown-Hudgins also alleged disabling pain when performing work-related activities. For instance, she "alleged a lot of pain when walking just a few feet . . . [and] she needed assistance getting out of bed, getting out of the tub or rising from a couch or chair because she cannot bend her right knee all the way." (Tr. 17.) The ALJ is required to assess the claimant's credibility as to subjective complaints of pain and other symptoms according to the following two-step process:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (internal citations omitted); *accord Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862–63 (6th Cir. 2011). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

9

Although the ALJ determined "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," she stopped after the first step of the credibility analysis. (Tr. 17.) The ALJ found Brown-Hudgins should be permitted to sit and stand "as necessary for pain" (Tr. 16), but she did not explain which of Brown-Hudgins' other allegations were credible, the weight given to the testimony as a whole, or why none of the other described limitations were incorporated into her RFC assessment. Although the ALJ found some evidence in the record was contrary to Brown-Hudgins' testimony (Tr. 17), the explanation that follows only cites evidence consistent with the allegations earlier in the paragraph (Tr. 18), and is therefore not sufficiently specific to make clear what testimony the ALJ credited and why.

### B. *Harmless Error*

The Commissioner contends that even if the ALJ erred, remand is inappropriate because (1) the RFC determination is supported by substantial evidence, and (2) any failure to consider the functional limitations resulting from Brown-Hudgins' obesity is harmless error because Brown-Hudgins is not disabled: even under a more restrictive RFC assessment she still would be capable of performing her past sedentary work.

"An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation and quotations omitted). "A court cannot excuse the denial of a mandatory procedural protection simply because . . . a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. Therefore "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 546–47).

Standing alone, the ALJ's failure to explain the weight given Brown-Hudgins' testimony and the reasons for that weight is grounds for reversal unless that failure was harmless error. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *see Rogers*, 486 F.3d at 248. Such an error is harmless if, "leaving the problematic reasoning aside," "the rest of the ALJ's reasons support [the credibility] finding." *Riser v. Comm'r of Soc. Sec.*, No. 13-cv-11135, 2014 WL 1260127, at *16 (E.D. Mich. Mar. 26, 2014) (quoting *New v. Colvin*, No. 12-219-ART, 2013 WL 4400522, at *4 (E.D. Ky. Aug. 13, 2013)). In this case, the ALJ did not make an explicit credibility finding or explain her reasoning. This error is not harmless because the determination "fails to contain specific reasons for the finding on credibility, supported by the evidence in the case record, nor is it sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Brown-Hudgins'] statements and the reasons for that weight." *Rogers*, 486 F.3d at 249 (citations and quotations omitted). Therefore, Brown-Hudgins is entitled to remand for the ALJ to address the credibility of her subjective complaints.

As explained above, the same failure to explain her reasoning infected the ALJ's RFC assessment. Both the ALJ's failure to properly consider the impact of obesity and address how she determined the claimant's RFC may constitute grounds for remand. *See, e.g.*, *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *14 (E.D. Mich. June 18, 2012) (remanding for failure to resolve inconsistencies in the record in RFC assessment); *Norman*, 694 F. Supp. 2d at 750 (remanding because ALJ failed to consider impact of obesity under SSR 02-1P); *Rojas v. Comm'r of Soc. Sec.*, No. 1:07-CV-1035, 2009 WL 465768, at *7 (W.D. Mich. Feb. 24, 2009) (same). "[A]n 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'" *Lowery v. Comm'r, Soc. Sec.*

*Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because the ALJ also failed to meaningfully address inconsistencies in the record regarding Brown-Hudgins' RFC, or the impact of her obesity on her RFC, the Court finds Brown-Hudgins is entitled to remand.

**IV.  CONCLUSION**

For the reasons stated above, the Report (Doc. No. 20) is **ADOPTED** as modified, Brown-Hudgins' Motion (Doc. No. 15) is **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings. The Clerk of the Court is **DIRECTED** to close this case.

It is so ORDERED.

Entered this the __23rd___ day of September, 2015.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT